*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABDUS SHAHID,

Appellant,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Appellee.

FOR PUBLICATION
August 20, 2020
9:00 a.m.

No. 347123
Wayne Circuit Court
LC No. 18-011090-AA

Before: RONAYNE KRAUSE, P.J., and SAWYER and BOONSTRA, JJ.

RONAYNE KRAUSE, P.J.

Appellant, Abdus Shahid, appeals by leave granted[1] the circuit court's order affirming the administrative decision finding that he violated regulations governing the use of benefits received under Michigan's Food Assistance Program (FAP), and funded under the federal Supplementary Nutrition Assistance Program (SNAP), 7 USC 2011, *et seq*. As a consequence, appellant was deemed to have committed an Intentional Program Violation (IPV), so he was disqualified from FAP for 12 months and appellee, the Department of Health and Human Services (DHHS), was entitled to recoup the overissuance of benefits. Because there was no evidence presented to explain why appellant's pattern of benefits transactions was indicative of improper use, and DHHS appears to have instead relied on presumption alone, we conclude that the administrative decision was unsupported by substantial evidence. We therefore reverse.

## I. BACKGROUND

In November 2016, the United States Department of Agriculture—Food and Nutrition Service (USDA)—the federal agency charged with administering the SNAP—began investigating Family Bazar, a seller of food and household items located in Hamtramck, Michigan, for suspected violations of the regulations governing the SNAP. During its investigations, the USDA identified

---

[1] *Shahid v Dep't of Health & Human Servs*, unpublished order of the Court of Appeals, entered May 23, 2019 (Docket No. 347123).

three types of electronic benefit transfer (EBT) transaction patterns that it considered indicative of benefits "trafficking," which is the term it uses for using FAP benefits to receive cash, non-food items, or ineligible food items. The patterns are: (a) transactions ending in the "same cents" values of $.00, $.50, and $.99; (b) multiple transactions made from the same benefits account within a 24-hour period; and (c) transactions in excess of $85. The record does not reflect explanation of why the USDA considers those patterns to be indicative of trafficking. The USDA conducted a site inspection of Family Bazar, which was found to have a single point-of-sale cash register without an optical scanner, and it sold various household items in addition to food. The USDA offered Family Bazar an opportunity to respond to the allegations of trafficking, to which Family Bazar apparently did not respond. The USDA determined that Family Bazar had committed benefits trafficking, so it permanently disqualified the store from participating in the program.

After completing its investigation, the USDA provided its investigative reports to DHHS, which administers Michigan's FAP and is responsible for pursuing trafficking charges against individual benefit recipients. A "food stamp trafficking unit supervisor" gave an accumulated packet of federal government investigation documents to Agent Mark Sultana of DHHS's Office of the Inspector General (OIG). Sultana reviewed the USDA's investigative reports and identified that appellant had engaged in approximately 60 EBT transactions that met the criteria for suspicious transactions identified by the USDA. Agent Sultana notified appellant that DHHS believed appellant had engaged in benefits trafficking and had committed an intentional program violation (IPV) of the FAP's regulations. Appellant did not respond to Agent Sultana's invitation to participate in an interview, nor did he admit the IPV and agree to repay the benefits when invited to by DHHS. Agent Sultana requested a hearing through Michigan's Administrative Hearing Service.

A telephone hearing was held before administrative law judge (ALJ) Janice Spodarek. Agent Sultana appeared on behalf of the Department, and appellant was represented by an authorized hearing representative. Agent Sultana recited much of the contents of the USDA's investigation of Family Bazar, the transactions made by appellant, and the transactions that satisfied the USDA's criteria for being suspicious. The ALJ expressed some concern as to why those criteria were indicative of trafficking, to which Agent Sultana did not directly respond, instead merely referring to the "federal investigation." Agent Sultana admitted that he did not participate in the federal investigation or in the preparation of the federal investigation reports. Rather, he only "put all of this information together." He also admitted that he had no independent evidence other than what he was given from the federal government, nor did he have any evidence of appellant's mental state or that he ever did actually receive cash in exchange for an EBT transaction. Appellant testified that he bought "only food" at Family Bazar.

The ALJ essentially adopted DHHS's factual assertions without ever mentioning appellant's brief testimony. The ALJ recognized that DHHS had the burden of proving trafficking by clear and convincing evidence. It found that DHHS had met that burden, because:

> A review of the Respondent's EBT history revealed that [his] EBT Bridge card was used to perform unauthorized FAP transactions at the Family Bazar as documented by the USDA Food and Nutrition Service, including an unusual number of transactions ending in the same cents value, multiple transactions made from

individual benefit accounts in unusually short time frames or excessively large recipient purchase transactions for a store of this size and inventory.

The Petitioner does not need to prove explicit intent; it may be inferred with circumstantial evidence.

Appellant sought judicial review of the ALJ's decision in the circuit court. The circuit court affirmed, citing the deference given to the ALJ to weigh the evidence and assess the credibility of the witnesses. Appellant sought, and we granted, leave to appeal the circuit court's decision. *Shahid v Dep't of Health & Human Servs*, unpublished order of the Court of Appeals, entered May 23, 2019 (Docket No. 347123).

## II. STANDARD OF REVIEW

Generally, we review de novo a trial court's legal conclusions, and we review its factual findings for clear error. *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014). We also review for clear error whether the trial court misapprehended or misapplied its own review of whether the agency's factual findings were adequately supported. *Id*. Ordinarily, a trial court would review an agency's factual findings under the substantial evidence standard, under which the agency's factual findings must be supported by competent, material, and substantial evidence on the whole record, which has been described as "more than a mere scintilla, but less than a preponderance of the evidence." *VanZandt v State Employees Retirement System*, 266 Mich App 579, 583-584; 701 NW2d 214 (2005) (quotation omitted). However, as the ALJ recognized, federal regulations require a significantly elevated quantum of proof for establishing an IPV: clear and convincing evidence. 7 CFR 273(e)(6). "[T]he clear and convincing evidence standard" is "the most demanding standard applied in civil cases." *In re Martin*, 450 Mich 204, 226-227; 538 NW2d 399 (1995). In contrast, "substantial evidence" may well be the least demanding standard.

Appellant argues that in reviewing the ALJ's factual findings under the substantial evidence standard, the trial court erred by failing to recognize that DHHS's standard of proof before the ALJ was that of clear and convincing evidence. Nevertheless, under the circumstances of this case, we need not address the significance, if any, of DHHS's heightened burden of proof in the administrative proceeding. As we will discuss, we conclude that the trial court clearly erred even in applying the substantial evidence standard. We therefore leave for another day whether a trial court should review agency findings in a SNAP IPV determination under the clear and convincing standard. Appellant also raises a due-process argument, which is a constitutional question we review de novo. *Hanlon v Civil Serv Comm*, 253 Mich App 710, 717; 660 NW2d 74 (2002) (citation omitted).

## III. ANALYSIS

There is no dispute that appellant made the transactions documented by DHHS. There is no dispute as to the nature, design, or operations of Family Bazar. There is no dispute that the USDA found Family Bazar to have violated the SNAP program, or that the USDA has certain criteria it deems indicative of benefits "trafficking." However, there is no evidence whatsoever that any of appellant's transactions were actually in violation of any SNAP or FAP rules. The only

ostensible evidence is by way of inference based on the USDA's criteria; yet, there is no evidence whatsoever explaining why those criteria are indicative of IPVs. The record shows that DHHS had ample opportunity to provide an explanation and simply failed to do so.

On appeal, DHHS argues that Family Bazar carried mostly non-food items, and that appellant's transaction history shows that he used his EBT card at other grocery stores. This does not explain why the USDA's criteria are indicative of trafficking, or why, for example, a high dollar-value transaction should be, as DHHS puts it, "unusual, irregular and inexplicable." The trial court properly recognized that the ALJ's credibility determinations and weighing of the evidence are entitled to deference. See *Dep't of Comm Health v Risch*, 274 Mich App 365, 372-373; 733 NW2d 403 (2007). However, the ALJ made no credibility assessment; it simply accepted DHHS's unexplained conclusion essentially verbatim, but without evidence as to its basis or the specifics of appellant's transactions, e.g., what he received in exchange for FAP benefits, or what his intent was. Although a pattern of transactions deemed to be suspicious may provide a proper basis for investigation, we conclude that it alone is insufficient to constitute substantial (much less clear and convincing) evidence that appellant *actually* committed an IPV.

We emphasize that we are not holding that appellant did not commit an IPV. However, DHHS failed to provide any explanation for *why* the USDA's criteria are indicative of trafficking. Even if DHHS could provide such an explanation—which it was not even able to do during oral argument before this Court—it would still also need to establish that one or more individual transactions were fraudulent. In other words, a suspicious pattern may be cause for an investigation, but it is not, by itself, proof that any particular transaction was actually fraudulent, especially under the "clear and convincing" standard of proof. Finally, even if some of appellant's transactions were fraudulent, that would not establish that all of them were fraudulent. It would therefore be improper to require appellant to repay *all* transactions just because *some* were improper, or because they happen to fall within a pattern suggesting that some of them *might* have been improper. Nonetheless, we expressly hold that DHHS is not precluded by this opinion from recommencing a new IPV claim against appellant, if DHHS has some genuine evidence that any specific transaction was actually fraudulent.

## IV. CONCLUSION

Because the ALJ's decision was not factually supported under any trial court standard of review, the trial court erred by affirming it. We recognize that appellant has also raised claims that the ALJ's decision was arbitrary and that he was deprived of due process. Because appellant is entitled to reversal on the basis of insufficient factual support, we need not address his remaining arguments.

Reversed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Mark T. Boonstra